# EXHIBIT C

# FORBEARANCE AGREEMENT

This Forbearance Agreement (this "Agreement") is entered into as of February 12, 2016, by and between 22 MAPLE STREET, LLC, a Delaware limited liability company having its principal office at 260 Chambers Bridge Road, Suite 2A, Brick, New Jersey 08723 (together with its successors and assigns, the "Amesbury Borrower"), 25 ORIOL DRIVE, LLC, a Delaware limited liability company having its principal office at 260 Chambers Bridge Road, Suite 2A, Brick, New Jersey 08723 (together with its successors and assigns, the "Autumn Borrower"), 59 COOLIDGE ROAD, LLC, a Delaware limited liability company (together with its successors and assigns, the "Emerson Village Borrower"), 20 KINMONTH ROAD, LLC, a Delaware limited liability company having its principal office at 260 Chambers Bridge Road, Suite 2A, Brick, New Jersey 08723 (together with its successors and assigns, the "Waban Health Center Borrower"; and the Amesbury Borrower, Autumn Borrower, Emerson Village Borrower and Waban Health Center Borrower each individually and collectively, "Borrower"), AVI "ZISHA" LIPSCHUTZ, an individual ("Zisha"), DOV NEWMARK, an individual ("Dov"), and LARRY LIPSCHUTZ, an individual ("Larry", and together with Dov and Larry and with their successors and assigns, each a "Guarantor" and collectively, jointly and severally, the "Guarantor"), CAPITAL FUNDING, LLC, a Maryland limited liability company, individually as a Lender, and as Agent (in such capacity, "Agent"), BANCALLIANCE INC., CONGRESSIONAL BANK, a Maryland chartered bank, MVB BANK, INC., a West Virginia banking corporation, and AP MA FUNDING LLC, a Delaware limited liability company, each as additional Lenders, and the financial institutions or other entities from time to time parties hereto, each as a Lender (collectively, "Lenders").

## RECITALS

A.    Pursuant to that certain Loan Agreement dated as of March 4, 2014 (the "Original Loan Agreement") by and among Borrowers, Agent and Lenders, as amended by that certain First Amendment to Credit and Security Agreement dated as of June 30, 2014 (the "First Amendment") and that certain Second Amendment to Loan Agreement dated as of July 21, 2014 (the "Second Amendment"; and collectively with the First Amendment and Original Loan Agreement, the "Loan Agreement"), Agent and Lenders agreed to make available to Borrower a loan (as amended, modified, supplemented, extended and restated from time to time, the "Loan"). Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Loan Agreement.

B.    The Loan is evidenced by one or more promissory notes (including all schedules, riders, allonges, endorsements, addenda or amendments together with any renewals, replacements, substitutions or extensions thereof) executed by Borrower in an original principal amount (or, if more than one Note is issued to a Lender, in an aggregate original principal amount equal to such Lender's Pro Rata Share of the Loan Commitment) (collectively, the "Note").

C.    The Note is secured by: (i) that certain Deed of Trust and Security Agreement dated as of March 4, 2014 from the Amesbury Borrower (the "Amesbury Deed of Trust") in favor of and for the benefit of Agent and Lenders and covering the property located at 22 Maple Street, Amesbury, Massachusetts 01913 (the "Amesbury Property"), (ii) that certain Deed of Trust and Security Agreement dated as of March 4, 2014 from the Autumn Borrower (the

"Autumn Deed of Trust") in favor of and for the benefit of Agent and Lenders and covering the property located at 25 Oriol Drive, Worcester, Massachusetts 01605 (the "Autumn Property"), and (iii) that certain Deed of Trust and Security Agreement dated as of March 4, 2014 (the "Emerson Village Deed of Trust") from the Emerson Village Borrower in favor of and for the benefit of Agent and Lenders and covering the property located at 9 Coolidge Hill Road, Watertown, Massachusetts 02472 (the "Emerson Village Property"), and (iv) that certain Deed of Trust and Security Agreement dated as of March 4, 2014 (the "Waban Health Center Deed of Trust"; and together with the Amesbury Deed of Trust, Autumn Deed of Trust, Emerson Village Deed of Trust, the "Deed of Trust") from the Waban Health Center Borrower in favor of and for the benefit of Agent and Lenders and covering the property located at 20 Kinmonth Road, Newton, Massachusetts 02468 (the "Waban Health Center Property"; and collectively with the Amesbury Property, Autumn Property, Emerson Village Property, the "Collateral Properties").

D.      Pursuant to that certain Guaranty of Payment and Performance dated as of March 4, 2014, Guarantor guaranteed the payment of all indebtedness and the performance of Borrower's obligations to Lenders under the Note.

E.      Pursuant to the Loan Agreement, Borrower is required to satisfy certain Minimum EBITDAR covenants as are more particularly set forth in the Loan Agreement.

F.      For the quarters ending June 30, 2015, September 30, 2015 and December 31, 2015, Borrower has failed and/or anticipates that it will fail to maintain the Minimum EBITDAR covenants set forth in the Loan Agreement, which failure constitutes an Event of Default under Section 8.1(o) of the Loan Agreement (the "Designated Default").

G.      Notwithstanding the Designated Default, Borrower desires for Agent and Lenders to forbear from enforcing its rights and remedies under the Loan Documents (as defined below). Borrower has requested an extension and modification of the Loan to enable Borrower to market and sell the Collateral Properties in repayment of the Loan, and Agent and Lenders are willing to grant such forbearance on the terms and conditions set forth herein.

**AGREEMENT**

NOW, THEREFORE, in consideration for the agreements, representations, acknowledgements and warranties set forth in this Agreement, each of the Parties hereby agrees, represents, acknowledges, and warrants as follows:

1.      Defined Terms; Interpretive Provisions.

1.1      Certain Defined Terms.  As used herein, the following terms have the corresponding meanings set forth below:

"Current Operating Costs" has the meaning ascribed to that term in the AR Intercreditor Agreement; provided, however, that for purposes of calculating the Current Operating Costs of any Facility, the management fee may not exceed five percent (5%) of the Gross Revenues of that Facility (excluding any revenue derived from extraordinary and non-recurring events) in any calendar month.

"Effective Date" means the date on which all of the conditions specified in Section 6 of this Agreement are satisfied.

"Excess Cash Flow" means, for any calendar month for a Facility, an amount equal to eighty percent (80%) of the excess of (a) Gross Revenues from that Facility for that calendar month over (b) Current Operating Costs for that Facility for that calendar month.

"Forbearance Default" means Borrower's breach of any representation, warranty, or acknowledgement of this Agreement, or failure in any way to completely perform any term, condition, obligation or covenant of this Agreement within the time required therefor, if any.

"Forbearance Expiration Date" means February 29, 2016.

"Forbearance Period" means the period from the Effective Date until the Forbearance Termination Date during which the Agent and Lenders shall forbear from exercising their rights and remedies with respect to the Designated Default.

"Forbearance Termination Date" means the earlier of (a) the date of occurrence of a Forbearance Termination Event, and (b) the Forbearance Expiration Date.

"Forbearance Termination Event" means the occurrence of any of the following:  (a) a Forbearance Default; (b) any default under any of the Loan Documents other than the Designated Default; (c) any Material Adverse Change to Borrower; (d) any of the Loan Documents shall for any reason cease to be in full force and effect in accordance with their terms, or their validity or enforceability shall be contested by any party thereto; (e) a material judgment adverse to Borrower shall be entered in any legal proceeding; (f) any property belonging to any Borrower, or any material part thereof, is taken by execution, levy, attachment, forfeiture, sequestration or other process of law (other than in the nature of eminent domain); or (g) any Borrower shall (i) execute an assignment for the benefit of creditors, or (ii) become or be adjudicated a bankrupt, debtor or insolvent under any bankruptcy or insolvency law, or (iii) admit in writing its/ his inability to pay its/ his debts generally as they become due, or (iv) apply for or agree by consent to the appointment of a conservator, receiver, trustee or liquidator of it/ him or of all or a substantial part of its/ his assets, or (v) file a voluntary petition seeking relief under the provisions of title 11, United States Code, or (vi) be the subject of an involuntary bankruptcy case commenced under 11 U.S.C. section 303, or (vii) file an answer admitting the material allegations of or consenting to, or default in, a petition filed against it/ him in any proceeding under any debtor relief laws, or (viii) institute a voluntary bankruptcy case or be or become a party to any other judicial proceedings intended to effect a discharge of its/ his debts, in whole or in part, or a postponement of the maturity or the collection thereof, or a suspension of any of the rights of Agent and Lenders granted in the Loan Documents or this Agreement.

"Gross Revenues" means all gross revenues derived from the operation of a Facility, including all extraordinary or non-recurring events or the sale, exchange or other disposition of capital assets or realized gains on investments and non-operating activities and appreciation.

"Indebtedness," whether such term is capitalized or not, means any and all liabilities, obligations, debts and indebtedness to Agent and Lenders, including principal,

interest, costs and expenses for which Borrower is responsible in any capacity, whether arising under any of the Loan Documents or any other loan, note, credit facility, guarantee, instrument or other evidence of indebtedness concerning the Loan.

"Loan Documents" means the Loan Agreement, the Note, the Deed of Trust, the Guaranty and all other documents, instruments and agreements that now or hereafter evidence, guaranty or secure the Loan.

"Material Adverse Change" means any change, event or occurrence that, individually or in the aggregate, has a material adverse effect on, or a material adverse change in, (a) the business, operations, financial condition or results of operations of Borrower, and (b) the ability of Borrower to perform its obligations under this Agreement.

"Parties" means Borrower, Guarantor and Agent and Lenders.

1.2     Interpretive Provisions.  The meaning of defined terms shall be equally applicable to the singular and plural forms of the defined terms.  The words "hereof," "herein," "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement.  The captions and headings of this Agreement are for convenience of reference only and shall not affect the interpretation of this Agreement.  The term "including" is not limiting and means "including without limitation."  Whenever any performance obligation hereunder (other than a payment obligation) shall be stated to be due or required to be satisfied on a day other than a business day, such performance shall be made or satisfied on the next succeeding business day.  In the computation of periods of time from a specified date to a later specified date, the word "from" means "from and including;" the words "to" and "until" each mean "to but excluding," and the word "through" means "to and including."

2.     Acknowledgments Concerning Loan and Defaults.

2.1     Truth of Recitals.  Borrower and Guarantor acknowledge the truth and accuracy of the Recitals set forth above.

2.2     Liability for Loan.  Borrower and Guarantor acknowledge and agree that (a) Borrower is indebted to Lenders for repayment of the sums due under the Loan and for payment and performance under the Loan Documents to which it is a party, and (b) Guarantor is liable to Lenders for payment and performance under the Guaranty.

2.3     Status of Indebtedness.

(a)     Borrower acknowledges that, as of February 9, 2016, the outstanding principal balance of the Loan is $36,856,627.  Interest in the amount of $58,970.60 has accrued as of February 9, 2016 and remains unpaid.

(b)     Borrower and Guarantor hereby ratify all of the Loan Documents to which they are a party and reaffirm all of their obligations with respect to the Loan.  Borrower and Guarantor each hereby acknowledge, reaffirm and agree that the Loan Documents, as modified by this Agreement, represent valid and binding obligations of Borrower and Guarantor to Agent and Lenders enforceable according to the terms thereof.  Borrower unconditionally

owes to Lenders the full amount of the outstanding indebtedness secured by the Deed of Trust, including unpaid principal, accrued interest and other fees and charges provided for in the Note and the other Loan Documents. Borrower and Guarantor promise to perform all obligations under the Loan Documents to which they are a party in accordance with the terms thereof; provided, however, that the foregoing shall not obligate Borrower or Guarantor to cure the Designated Default except as otherwise expressly provided herein.

(c)     There are no existing defenses, claims, counter-claims, counter demands, or rights of setoff or recoupment whatsoever with respect to the Note, the Guaranty or any of the other Loan Documents, or, if Borrower and Guarantor believe that there are, Borrower and Guarantor are waiving and releasing same pursuant to Section 7.

2.4     Acknowledgement and Preservation of Default.  Borrower and Guarantor acknowledge, admit and agree that (a) the Designated Default is preserved and shall continue in existence, (b) this Agreement does not constitute and shall not be construed as a waiver of the Designated Default, and (c) nothing in this Agreement shall be construed as a waiver by Agent or any Lender of Agent's and Lenders' right to assert and enforce the Designated Default.

2.5     No Obligation to Forbear.  Except as expressly set forth herein, (i) Agent and Lenders have no obligation to modify, extend, or otherwise amend the terms and conditions of the Loan Documents or to negotiate with Borrower or Guarantor or any other person or entity concerning any of the foregoing, and (ii) Agent's and Lenders' execution of this Agreement does not create any such obligation.

3.     Representations and Warranties of Borrower.  Each Borrower certifies, represents, warrants and acknowledges that each of the following is true as to itself:

3.1     No Litigation.  Except as disclosed by Borrower to Agent in writing, there is no litigation, prosecution, investigation or proceeding of any nature whatsoever now pending or, to the best of Borrower's knowledge, threatened against Borrower that could or might materially and adversely affect performance of any obligations under this Agreement or the other Loan Documents.

3.2     Due Organization.  Borrower is a limited liability company, duly formed, validly existing and in good standing under the laws of the State of Delaware.  Since the origination of the Loan, there has been no change in the ownership or control of Borrower, and the operating agreements, articles or by-laws, as the case may be, have not been modified or amended in any respect.

3.3     Authority.   Borrower has full power and authority and have been authorized to execute, deliver, and perform this Agreement.  The execution, delivery and performance of this Agreement and the transactions contemplated herein have not resulted and will not result in a breach or violation of any provision of (i) Borrower's organizational documents, (ii) any statute, law, rule or regulation applicable to Borrower, (iii) any judgment, injunction, order, decree, writ or determination applicable to Borrower, or (iv) any contract, agreement or other instrument by which Borrower may be bound or to which any of the assets of Borrower are subject.

3.4     No Breach.  Except for the Designated Default, Borrower is not in breach of or in default under any Loan Document to which it is a party, and no Forbearance Default has occurred.

3.5     Financial Statements.   The financial statements that Borrower and Guarantor most recently submitted to Agent are true and complete in all material respects as of their date and fairly represent the financial condition of the respective Borrower and Guarantor.

3.6     Truth of Loan Documents.  All representations and warranties set forth in the Loan Documents are true and correct in all material respects as of the date hereof, except as qualified or limited by this Agreement or as specifically disclosed in writing by a Borrower to Agent.

4.      Certain Covenants.

4.1     Minimum EBITDAR.  Notwithstanding Section 4.12(a)(ix) of the Original Loan Agreement, during the Forbearance Period, Borrower shall cause EBITDAR to be not less than the following amounts for the six (6) month periods ending on the dates set forth below, each on a trailing six (6) month annualized basis: (a) $2,534,614 for the period ending December 31, 2015, (b) $2,465,297 for the period ending January 31, 2016, (c) $2,463,198 for the period ending February 29, 2016, (d) if the Forbearance Period is duly extended as hereinafter contemplated, $2,368,978 for the period ending March 31, 2016, (e) if the Forbearance Period is duly extended as hereinafter contemplated, $2,265,600 for the periods ending April 30, 2016, May 31, 2016 and June 30, 2016.

4.2     No Maturity Extension Option.   Notwithstanding Section 2.1(b) of the Original Loan Agreement, because of the Designated Default, Borrower shall not have the right to extend the maturity of the Loan.

4.3     Excess Cash Flow Payments.

(a)     On February 15, 2016, and on the fifteenth (15th) day of each consecutive calendar month thereafter, Borrower shall provide to Agent and AR Lender a certificate (an "Excess Cash Flow Certificate") in the form of Exhibit A attached hereto and incorporated herein by this reference properly completed and certified as being true and correct by the chief financial officer or another responsible officer of each applicable Borrower and each applicable Operator, which Excess Cash Flow Certificate shall (a) demonstrate the calculation of the Excess Cash Flow for each Facility for the period coinciding with the financial reporting due for such calendar month, and (b) specify the amount, if any, to be funded to pay the Excess Cash Flow from the AR Loan (as defined in the AR Intercreditor Agreement) to satisfy the requirement of the payment of Excess Cash Flow. On February 20, 2016, and on the twentieth (20th) day of each consecutive month thereafter, Borrower shall pay the Excess Cash Flow from the immediately preceding calendar month to Lender, to be applied to payment principal under the Loan, without the requirement that Borrower pay any Breakage Costs or other fees in connection therewith, an amount equal to the Excess Cash Flow from each Facility for the immediately preceding calendar month.  Notwithstanding the foregoing, during such

time as the AR Loan is in effect, Excess Cash Flow shall only be required to be paid to the extent of funds that Operators are able to draw under the AR Loan, as well as any other funds actually received by Operators which are not required to be applied towards payment of the AR Loan.

(b)      For avoidance of doubt, Borrower acknowledges and agrees that all proceeds of the AR Loan previously and hereafter remitted to or for the account or benefit of Borrower constitute advances by Operators to Borrower and that Borrower is obligated to repay all such advances on terms and conditions agreed upon by and among Borrower and Operators.

4.4      Extension of Forbearance Expiration Date.  Borrower may request an extension of the Forbearance Expiration Date to June 30, 2016 (or such longer period as may be granted by Agent in its reasonable discretion) subject to satisfaction of the following conditions:

(a)      On or before February 29, 2016:

(i)  Borrower shall have delivered to Agent written notice of its election to extend the Forbearance Expiration Date to June 30, 2016; and

(ii) if either of the two conditions set forth in Section 6(d)(ii) or Section 6(d)(iii) are satisfied, Borrower must: (A) deliver a fully executed purchase and sale agreement or letter of intent with a bona fide third party purchaser acceptable to Agent, in Agent's sole discretion, on terms and conditions acceptable to Agent providing for a cash sales price in an amount greater than or equal to all amounts due under the Loan Documents, a closing on or before June 30, 2016, which will result in repayment of the Loan in full, or (B) close on the transaction described in Section 6(d)(ii) below and disburse to Agent Three Million and No/100 Dollars ($3,000,000.00) in immediately available funds, which funds Agent is authorized to apply to the reduction of the outstanding principal balance of the Loan with the requirement of the payment of any Breakage Costs or any other fee due under the Loan Documents in connection therewith, other than the Payoff Fee and Exit Fee which the parties agree and acknowledge shall not apply to such payment; or (C) close on the transaction described in Section 6(d)(iii) below and disburse to Agent Three Million and No/100 Dollars ($3,000,000.00) in immediately available funds, which funds Agent is authorized to apply to the reduction of the outstanding principal balance of the Loan with the requirement of the payment of any Breakage Costs or any other fee due under the Loan Documents in connection therewith, other than the Payoff Fee and Exit Fee which the parties agree and acknowledge shall not apply to such payment; and

(b)      No Forbearance Termination Event shall have occurred.

4.5      Failure of Closings a Forbearance Default.  If the conditions set forth in Section 4.4(ii)(a) hereof are satisfied, the termination of the purchase and sale agreement or letter of intent prior to the closing shall constitute a Forbearance Default.

4.6      Financial Reports.  In addition to all financial reports required to be delivered by Borrower, Operator and Guarantor under the Loan Agreement, Borrower

shall deliver to Agent, in form and detail satisfactory to Agent, a current census and payor mix report for each Facility on the 5th and 20th days of each month for the semi-monthly period ending on the last day of the immediately preceding month and the 15th day of the then current month, respectively. In addition, Agent and Lenders shall permit Borrower, Operator and Guarantor to deliver the monthly reports required under Section 4.6(a)(i), 4.6(b)(i) and the Guaranty to be delivered within forty-five (45) days after the end of each month instead of within thirty (30) days.

4.7     Payoff Fee and Exit Fee.  Notwithstanding Section 2.1(c) and Article 9 of the Original Loan Agreement, in the event Borrower closes on a sale of the Property on or before June 30, 2016, which date may be extended by Agent in Agent's reasonable discretion, in accordance with Section 4.4(a)(iii)(A) above and simultaneously repays the Loan in full, Agent shall waive the Payoff Fee.  In addition, the Exit Fee due from Borrower upon such repayment shall be an amount equal to 1.00% of the amount required to repay the Loan in full.

4.8     Monthly Loan Status Calls.  Borrower shall cause appropriate officers and employees of Borrower to participate in conference calls with Agent and Lenders no less than once every calendar month on a date and at a time designated by Agent to update Agent and Lenders on the status of Borrower's performance under the Agreement and sales of the Facilities and to answer any questions Agent and/or Lenders may have in connection therewith.

4.9     Occurrence of Forbearance Termination Date.

(a)     If the Indebtedness is paid and satisfied in full before the Forbearance Termination Date, Agent and Lenders will release and reconvey the Deed of Trust encumbering each of the Collateral Properties.

(b)     If any portion of the Indebtedness remains unpaid upon the occurrence of a Forbearance Termination Event, then the entire unpaid Indebtedness shall be due and payable in full immediately upon the Forbearance Termination Date and the provisions of Section 5(b) shall apply.

5.     Forbearance; Remedies Upon Forbearance Termination Event.

(a)     Provided that no Forbearance Termination Event occurs, Agent and Lenders shall refrain and forbear during the Forbearance Period from exercising any of the Agent's and/or Lenders' rights and remedies with respect to the Designated Default; provided, however, that in no event shall the foregoing be deemed to limit, modify, amend, waive or otherwise affect Agent's or any Lender's rights and remedies that exist by reason of the Designated Default, all of which are expressly preserved and may be enforced by Agent in the event the Loan remains outstanding following the Forbearance Termination Date.

(b)     Upon the occurrence of a Forbearance Termination Event, Agent shall be entitled, at its sole option and without further notice to or demand on any Borrower or Guarantor, (i) to terminate its forbearance under this Agreement and, unless the Indebtedness is already due and payable, declare any or all Indebtedness of Borrower and Guarantor immediately due and payable without the expiration of any period of grace, and (ii) to seek all legal recourse against

Borrower and Guarantor and pursue and enforce, either successively or concurrently, all rights and remedies set forth in the Loan Documents and the Guaranty and such other rights in law or in equity as may be available to Agent and Lenders.

6.    Conditions Precedent to Forbearance.  It shall be a condition precedent to all obligations of Agent and Lenders hereunder that all of the following conditions precedent shall have been and shall continue to be satisfied:

(a)    No Forbearance Termination Event shall have occurred.

(b)    Lender shall have received all of the following in form and substance satisfactory to Lender: (i) an original of this Agreement fully executed by Borrower and Guarantor, (ii) an original amendment to the Management Subordination Agreement (the "Amendment to Management Subordination Agreement") executed by Borrower and Manager, which Amendment to Management Subordination Agreement limits the management fee that the Manager may collect under the Management Agreement to five percent (5%) of the gross revenue at a Facility per month, (iii) an original Amendment to AR Intercreditor Agreement (the "Amendment to AR Intercreditor Agreement") which Amendment to AR Intercreditor Agreement executed by Borrower, Operator and AR Lender in form approved by Agent in Agent's sole discretion, (iii) updated personal financial statements and tax returns for Guarantor in form satisfactory to Agent, and (iv) such other documents, instruments and agreements as Agent may require pursuant to the Loan Documents.

(c)    Borrower shall have paid to Lenders the sum of One Million and No/100 Dollars ($1,000,000.00) in immediately available funds to be applied to the reduction of the outstanding principal balance of the Loan, which Lenders are authorized so to apply upon receipt thereof with the requirement of the payment of any Breakage Costs or any other fee due under the Loan Documents in connection therewith, other than the Payoff Fee and Exit Fee which the parties agree and acknowledge shall not apply to such payment.

(d)    Borrower shall have delivered to Lender: (i) a fully executed purchase and sale agreement or letter of intent with a bona fide third party purchaser acceptable to Agent, in Agent's sole discretion, on terms and conditions acceptable to Agent providing for a cash sales price in an amount greater than or equal to all amounts due under the Loan Documents, a closing on or before June 30, 2016, which will result in repayment of the Loan in full, or (ii) a fully executed loan commitment from a lender and on terms and conditions satisfactory to Agent, in its sole discretion, for an unsecured loan to Borrower fully subordinated to the Loan in an amount equal to or greater than Three Million Dollars ($3,000,000) closing on or before February 29, 2016, or (iii) a fully executed commitment from an investor and on terms and conditions satisfactory to Agent, in its sole discretion, for an equity investment in Borrower in an amount equal to or greater than Three Million Dollars ($3,000,000) which investment is to occur on or before February 29, 2016.

(e)    Agent shall have received evidence satisfactory to the Agent, in Agent's sole and absolute discretion, that Borrower's and Guarantor's execution and delivery of this Agreement and all documents, instruments and agreements executed in connection herewith, have been duly authorized by all necessary action.

22365828v.11

7.    <u>General Release; Waiver</u>.

(a)    For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each of Borrower and Guarantor, for themselves and their respective predecessors, heirs, successors and assigns, do hereby waive, release, acquit and forever discharge Agent, each Lender and all of Agent's and each Lender's past, present, and future directors, officers, employees, agents, attorneys, principals, shareholders, partners, representatives, joint venturers, affiliates, parent and affiliated companies, subsidiaries, sureties and insurers, predecessors, successors, heirs, executors, administrators and assigns (collectively, the "<u>Lenders' Related Persons</u>"), and each of them, of and from any and all claims, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensation, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description, or character, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, that any or all of Borrower and Guarantor has or asserts or may hereafter have or assert against Agent or any Lender or any of the Lenders' Related Persons that in any way arise out of, are connected with or related to the Loan, the Loan Documents, the Guaranty or any of the transactions contemplated herein and therein or any earlier or other agreement or document referred to therein or any other action, claim, cause of action, demand, damage or cost of whatever nature as of the date of this Agreement (collectively, the "<u>Released Claims</u>").

(c)    The agreements of Borrower and Guarantor set forth in this <u>Section 7</u> shall inure to the benefit of the successors, assigns, insurers, administrators, officers, agents, employees, attorneys, and representatives of Agent, Lenders and the Lenders' Related Persons. To the extent that the releases as set forth above run to the favor of persons or entities not signatories hereto, this Agreement is hereby declared to be made in and for their respective benefits and uses.

(d)    Without limiting the generality of <u>Section 7(a)</u>, the each of Borrower and Guarantor hereby represent and warrant to Agent and Lenders that they have read the foregoing releases and waivers, have obtained the advice of counsel regarding the releases and waivers, have agreed to the provisions of this <u>Section 7</u> with full knowledge and understanding of the significance, extent, effect and consequences of the various releases and waivers granted pursuant to this <u>Section 7</u> and of the importance to Agent and Lenders of these waivers and releases, and are making the agreements, releases and waivers herein of their own volition and without any coercion or duress.

(e)    The releases contained in this <u>Section 7</u> are not to be construed and do not constitute an admission of liability on the part of Agent or any Lender. This release shall constitute an absolute bar to any Released Claim of any kind, whether such claim is based on contract, tort, warranty, mistake or any other theory, whether legal, statutory or equitable. Each of Borrower and Guarantor specifically agree that any attempt to assert a claim barred hereby shall subject each of them to the provisions of applicable law setting forth the remedies for the bringing of groundless, frivolous or baseless claims or causes of action.

(f)     The releases contained in this <u>Section 7</u> are not intended to, and shall not extend to, or in any way release, acquit, or discharge any of the rights, duties, or obligations arising from, created by, or maintained by this Agreement.

(g)     Each of Borrower and Guarantor represent and warrant to Agent and Lenders that each of Borrower and Guarantor alone are the owners of the Released Claims and that they have not heretofore hypothecated, pledged, encumbered, assigned or transferred, nor purported to hypothecate, pledge, encumber, assign or transfer, to any person or entity any of the Released Claims.  Each of Borrower and Guarantor further agree to indemnify, protect, defend and hold Agent and Lenders harmless from and against any and all claims, demands, losses, liabilities, damages, costs and expenses (including attorneys' fees and court costs) incurred by Agent and/or any Lender as the result of any person or entity asserting any such hypothecation, pledge, encumbering, assignment or transfer of any of the Released Claims.

8.      <u>Miscellaneous</u>.

8.1     <u>Integration; Modifications</u>.  This Agreement contains the entire agreement between Borrower, Guarantor, Agent and Lenders with respect to the subject matter hereof and, except to the extent that it modifies and amends the Loan Documents, supersedes all prior agreements and understandings with respect thereto.  This Agreement may not be changed, modified, or supplemented except by a writing signed by the Party against whom enforcement of such change, modification or supplement is sought.

8.2     <u>Counterparts</u>.   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original (including copies sent by facsimile transmission or electronically), but all of which together shall constitute but one and the same instrument.

8.3     <u>Full Force and Effect of Loan Documents; Conflicts</u>.   Except as specifically set forth herein, the Loan Documents are not amended or modified in any respect, and each of them remains in full force and effect.  In the event of any conflict or inconsistency between the terms and conditions of this Agreement and the other Loan Documents, the terms and conditions of this Agreement shall prevail.

8.4     <u>Attorneys' Fees</u>.   In any legal action, arbitration, or other proceeding brought to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and any other costs incurred in that proceeding in addition to any other relief to which it is entitled (including bankruptcy and appellate proceedings).   The provisions of this Section constitute a distinct and severable agreement from the contractual rights created by this Agreement.  In the event of a judgment against one party concerning any aspect of this Agreement, the right to recover post-judgment attorneys' fees incurred in enforcing the judgment shall not be merged into and extinguished by any money judgment.

8.5     <u>Severability</u>.  If any provision of this Agreement is found invalid, illegal or unenforceable, such provision shall be severed from this Agreement, and the validity, legality and enforceability of the remaining provisions shall not be impaired or affected thereby.

8.6     <u>Time of the Essence</u>.  Time is of the essence in the performance of each provision and satisfaction of each condition hereof.

8.7     No Waiver.  No failure or delay on the part of Agent or any Lender in the exercise of any power, right or remedy, and no course of dealing between Borrower and/or Guarantor and Agent shall operate as a waiver of such power, right or remedy, nor shall any single or partial exercise of any power, right or remedy preclude other or further exercise thereof or the exercise of any other power, right or remedy.  Without limiting the generality of the foregoing, Agent's and each Lender's forbearance hereunder shall not constitute a waiver of any succeeding breach or default by Borrower or Guarantor.

8.8     Governing Law.  This Agreement shall be governed by and interpreted in accordance with the laws of the State of Maryland without regard to rules concerning conflicts of laws, except to the extent federal law is applicable to Agent.

8.9     Further Assurances.  Borrower and Guarantor will, upon Agent's request, execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, to the Agent any and all documents, instruments and agreements and shall perform such acts as may be necessary or desirable, in Agent's judgment, to effectuate the intent and purpose of this Agreement and the other Loan Documents.

8.10    Binding Effect.  This Agreement shall be binding on and shall inure to the benefit of the Parties and their respective heirs, representatives, successors and permitted assigns.

8.11    Interpretation.  This Agreement is the result of negotiations between, and has been reviewed by counsel to, Borrower, Guarantor, Agent and Lenders, and is the product of all of the Parties.  Accordingly, this Agreement shall not be construed against Agent merely because of its involvement in the preparation of this Agreement.

8.12    Notices.    Any notice, demand, request, legal process or other communication that any party hereto may be required or may desire to give hereunder or under the Loan Documents shall be in writing and shall be deemed to have been properly given (a) if hand delivered, when delivered, (b) if mailed by United States mail, certified or registered, postage prepaid, two Business Days after mailing, (c) if by Federal Express or other reliable overnight courier service, on the next business day after delivered to such courier service, or (d) if by facsimile, on the day of transmission, so long as copy is sent on the same day by overnight courier, at the address set forth below, or at such other address as the party to be served with notice may have furnished in writing to the party seeking or desiring to serve notice as a place for the service of notice.

| | |
|---|---|
| Agent and Lenders: | Capital Funding, LLC |
| | 1422 Clarkview Road |
| | Baltimore, Maryland  21209 |
| | Attention:  Account Manager - Synergy |
| | |
| Borrower and/or Guarantor: | c/o Synergy Health Centers LLC |
| | 260 Chambers Bridge Road, Suite 2A |
| | Brick, New Jersey 08723 |
| | Attention: Zisha Lipschultz |
| | Email: Zisha@newenglandhc.com |

Any notice to any one of Borrower or Guarantor shall be deemed notice to all of them.

8.13   No Third Party Beneficiary.   Nothing contained in this Agreement is intended, nor shall it be construed or deemed, to confer any rights, powers, or privileges on any person or entity not a Party or a permitted successor or assign of a Party or any Lenders' Related Person.

8.14   No Reliance Upon Other Representations; Independent Counsel.   The Parties acknowledge that they have not executed this Agreement in reliance upon any promises, representations, warranties or statements not set forth in writing herein, that they are not acting under any misrepresentation or misapprehension as to this Agreement's legal effect, and that this Agreement has not been executed under any kind of duress, intimidation, coercion or compulsion.   The Parties further acknowledge and represent that that they (a) have been represented by legal counsel in connection with the negotiation of the terms of this Agreement, (b) read this Agreement carefully prior to signing it, and (c) understand its contents.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK.]

**IN WITNESS WHEREOF,** the undersigned have executed this Agreement as of the year and date first set forth above.

**BORROWER:**

22 MAPLE STREET, LLC, a Delaware limited liability company

By: _____
Name: Avi "Zisha" Lipschutz
Title:  Manager

25 ORIOL DRIVE, LLC, a Delaware limited liability company

By: _____
Name: Avi "Zisha" Lipschutz
Title:  Manager

59 COOLIDGE ROAD, LLC, a Delaware limited liability company

By: _____
Name: Avi "Zisha" Lipschutz
Title:  Manager

20 KINMONTH ROAD, LLC, a Delaware limited liability company

By: _____
Name: Avi "Zisha" Lipschutz
Title:  Manager

STATE OF _____    )

COUNTY OF __Ocen__    ) ss

NECHOMA B. PRESS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Dec. 15, 2020

On __February 9_____, 2016, before me the undersigned notary public in and for said state, personally appeared Avi "Zisha" Lipschutz, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he executed the same in his capacity(is), and that by his signature(s) on the instrument the individual(s) or the person upon behalf of which the individual(s) acted executed the instrument.

Notary Public

22365828v.11

**AGENT:**

CAPITAL FUNDING, LLC, a Maryland
limited liability company

By: _____
Name: _____
     Erik B. Howard
Title: _____
     Assistant Vice President

STATE OF Maryland )

COUNTY OF Baltimore )ss

On February 11 , 2016, before me the undersigned notary public in and
for said state, personally appeared Erik B Howard , personally known to
me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to me that he executed the same in
his capacity(is), and that by his signature(s) on the instrument the individual(s) or the person
upon behalf of which the individual(s) acted executed the instrument.

Notary Public

_____

**LENDER:**

CAPITAL FUNDING, LLC, a Maryland
limited liability company

By: _____
Name: _____
                   Erik B. Howard
Title: _____
             Assistant Vice President

STATE OF Maryland )
COUNTY OF Baltimore ) ss

On February 11 , 2016, before me the undersigned notary public in and for said state, personally appeared Erik Howard , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he executed the same in his capacity(is), and that by his signature(s) on the instrument the individual(s) or the person upon behalf of which the individual(s) acted executed the instrument.

Notary Public _____
My Commission Expires June 9, 2019

**LENDER:**

MVB BANK, INC.,
a West Virginia banking corporation

By: _____

Name:   John Schirripa

Title:   Executive Vice President

STATE OF _West Virginia_ )

COUNTY OF _Harrison_ ) ss

On _February 12_____, 2016, before me the undersigned notary public in and for said state, personally appeared _John Schirripa_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he executed the same in his capacity(is), and that by his signature(s) on the instrument the individual(s) or the person upon behalf of which the individual(s) acted executed the instrument.

_____
Notary Public

Robert A. Paugh

Official Seal
Notary Public, State of West Virginia
Robert A Paugh
1000 Johnson Avenue
Bridgeport, WV 26330
My commission expires October 21, 2018

Signature Page to Forbearance Agreement

**LENDER:**

CONGRESSIONAL BANK,
a Maryland chartered bank

By: _____
Name:    James Petersen
Title:     Authorized Signatory


STATE OF Virginia        )

COUNTY OF Fairfax        ) ss

On ____February  11th____, 2016, before me the undersigned notary public in and for said state, personally appeared James H. Petersen_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he executed the same in his capacity(is), and that by his signature(s) on the instrument the individual(s) or the person upon behalf of which the individual(s) acted executed the instrument.


_____
Notary Public

Signature Page to Forbearance Agreement

**LENDER**:

BANCALLIANCE INC.,
a Maryland corporation

By:  AP Commercial LLC,
its attorney-in-fact

By: _____
Name: _____John Gray_____
Title: _____Managing Director_____


STATE OF ____MD____ )

COUNTY OF __Montgomery__ ) ss

On ____Feb  11____, 2016, before me the undersigned notary public in and for said state, personally appeared ____John Gray____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he executed the same in his capacity(is), and that by his signature(s) on the instrument the individual(s) or the person upon behalf of which the individual(s) acted executed the instrument.


Notary Public

CAROL D. BAKER
NOTARY PUBLIC
MONGOMERY COUNTY
MARYLAND
MY COMMISSION EXPIRES SEPTEMBER 25, 2017

Signature Page to Forbearance Agreement

**LENDER**:

AP MA FUNDING LLC,
a Delaware limited liability company

By: _____
Name: _____
Title: _____

John Gray
Managing Director

STATE OF _____MD_____ )

COUNTY OF _Montgomery_ ) ss

On _____Feb 11_____, 2016, before me the undersigned notary public in and for said state, personally appeared _____John Gray_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he executed the same in his capacity(is), and that by his signature(s) on the instrument the individual(s) or the person upon behalf of which the individual(s) acted executed the instrument.

Notary Public

CAROL D. BAKER
NOTARY PUBLIC
MONGOMERY COUNTY
MARYLAND
MY COMMISSION EXPIRES SEPTEMBER 25, 2017

Signature Page to Forbearance Agreement

## CONSENT AND AGREEMENT OF GUARANTOR

The undersigned hereby represent, warrant, acknowledge and agree as follows:

1.      All capitalized terms used but not defined herein shall have the meanings ascribed in the Forbearance Agreement (the "Forbearance Agreement") to which this Consent of Guarantor is attached.

2.      The undersigned consent to the terms, conditions and provisions of the Forbearance Agreement and the transactions contemplated by it.

3.      The undersigned hereby reaffirm the full force and effectiveness of the Guaranty and acknowledge that their obligations under the Guaranty are separate and distinct from those of Borrower on the Loan.

4.      The undersigned have no claims, offsets or defenses with respect to the payment of sums due under the Guaranty.

5.      The undersign join in the Forbearance Agreement with respect to Section 7 of the Forbearance Agreement and agree to be bound by the terms thereof.

GUARANTOR:

_____
Avi "Zisha" Lipschutz

_____
Larry  Lipschutz

_____
Dov Newmark

22365828v.11

## CONSENT AND AGREEMENT OF GUARANTOR

The undersigned hereby represent, warrant, acknowledge and agree as follows:

1.     All capitalized terms used but not defined herein shall have the meanings ascribed in the Forbearance Agreement (the "Forbearance Agreement") to which this Consent of Guarantor is attached.

2.     The undersigned consent to the terms, conditions and provisions of the Forbearance Agreement and the transactions contemplated by it.

3.     The undersigned hereby reaffirm the full force and effectiveness of the Guaranty and acknowledge that their obligations under the Guaranty are separate and distinct from those of Borrower on the Loan.

4.     The undersigned have no claims, offsets or defenses with respect to the payment of sums due under the Guaranty.

5.     The undersign join in the Forbearance Agreement with respect to Section 7 of the Forbearance Agreement and agree to be bound by the terms thereof.

<strong>GUARANTOR:</strong>

_____

Avi "Zisha" Lipschutz

_____

Larry  Lipschutz

_____

Dov Newmark

21

## CONSENT AND AGREEMENT OF GUARANTOR

The undersigned hereby represent, warrant, acknowledge and agree as follows:

1.      All capitalized terms used but not defined herein shall have the meanings ascribed in the Forbearance Agreement (the "Forbearance Agreement") to which this Consent of Guarantor is attached.

2.      The undersigned consent to the terms, conditions and provisions of the Forbearance Agreement and the transactions contemplated by it.

3.      The undersigned hereby reaffirm the full force and effectiveness of the Guaranty and acknowledge that their obligations under the Guaranty are separate and distinct from those of Borrower on the Loan.

4.      The undersigned have no claims, offsets or defenses with respect to the payment of sums due under the Guaranty.

5.      The undersign join in the Forbearance Agreement with respect to Section 7 of the Forbearance Agreement and agree to be bound by the terms thereof.

**GUARANTOR:**

_____

Avi "Zisha" Lipschutz

_____

Larry  Lipschutz

_____

Dov Newmark

22365828v.11

Exhibit A

| | | Synergy | | | | |
|---|---|---|---|---|---|---|
| **Excess Cash Flow Worksheet** | | | | | | |
| for the month ending | 11/30/2015 | | | | | |
| | Merrimak | Waban | Watertown | Worcester | Total | |
| Gross Revenue | $ - | $ - | $ - | $ - | | |
| | | | | | | |
| Current Operating Costs | | | | | | |
| Principal and Interest Payments on all debt (A/R etc) | | | | | | |
| Payroll and Payroll Taxes* | $ - | $ - | $ - | $ - | | |
| Payments due under Owner-Operator Agreements | $ - | $ - | $ - | $ - | | |
| Ordinary Maintenance and Repairs | $ - | $ - | $ - | $ - | | |
| Rent including Equipment Leases | $ - | $ - | $ - | $ - | | |
| Management Fees (Capped at 5% of Gross Revenue | $ - | $ - | $ - | $ - | | |
| Accounts Payable* | $ - | $ - | $ - | $ - | | |
| Other Operating Costs* | $ - | $ - | $ - | $ - | | |
| Total | $ - | $ - | $ - | $ - | | |
| | | | | | | |
| Excess Cash Flow | $ - | $ - | $ - | $ - | | |
| | 80% | 80% | 80% | 80% | | |
| | | | | | | |
| Excess Cash Flow to Lenders | $ - | $ - | $ - | $ - | $ - | |
| | | | | | | |
| *Please supply supporting documentation* | | | | | | |